UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DALANA F.,[1]

                        Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

DECISION & ORDER

20-CV-0855MWP

## **PRELIMINARY STATEMENT**

Plaintiff Dalana F. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Supplemental Security Income and Disability Insurance Benefits ("SSI/DIB").  Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned.  (Docket # 15).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket ## 14, 16).  For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1]  Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

## DISCUSSION

I.   **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be

sustained "even where substantial evidence may support the claimant's position and despite the

fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v.*

*Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d

60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is

unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must

employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)

(*per curiam*). The five steps are:

(1)     whether the claimant is currently engaged in substantial
        gainful activity;

(2)     if not, whether the claimant has any "severe impairment"
        that "significantly limits [the claimant's] physical or mental
        ability to do basic work activities";

(3)     if so, whether any of the claimant's severe impairments
        meets or equals one of the impairments listed in Appendix
        1 of Subpart P of Part 404 of the relevant regulations (the
        "Listings");

(4)     if not, whether despite the claimant's severe impairments,
        the claimant retains the residual functional capacity
        [("RFC")] to perform [her] past work; and

(5)     if not, whether the claimant retains the [RFC] to perform
        any other work that exists in significant numbers in the
        national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v);[2] *Berry v. Schweiker*, 675 F.2d at 467.

"The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

step five the burden shifts to the Commissioner to 'show there is other gainful work in the

national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383

(quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).


## II.    The ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating

disability claims.  (Tr. 11-23).[3]  Under step one of the process, the ALJ found that plaintiff had

not engaged in substantial gainful activity since June 1, 2016, the alleged onset date.  (Tr. 13).

At step two, the ALJ concluded that plaintiff had the following severe impairments: disc

herniation at C5-C6 causing mass effect on the thecal sac and exiting nerve roots; anxiety; and,

depression.  (*Id.*).  The ALJ concluded that plaintiff's impairments of Raynaud's syndrome,

seizure disorder, and post-traumatic stress disorder ("PTSD") were not medically determinable

and that her impairments of gastric bypass and surgical repair of an abdominal hernia, ankle

fracture, hemorrhagic shock, status post hysterectomy, and substance abuse disorder were

non-severe.  (*Id.*).  At step three, the ALJ determined that plaintiff did not have an impairment

(or combination of impairments) that met or medically equaled one of the listed impairments.

(*Id.*).  The ALJ concluded that plaintiff had the RFC to perform simple, unskilled light work, but

that she must avoid working at unprotected heights, in extreme cold temperatures, or around

---

[2]  As noted by the Commissioner (Docket # 16-1 at 9-11), the regulations relating to the evaluation of medical evidence for SSI/DIB claims have been amended for claims filed after March 27, 2017.  *See* 82 Fed. Reg. 5844-01 (Jan. 18, 2017).  Because plaintiff's claims were filed after March 27, 2017 (Tr. 276), the Court has applied the amended regulations in reviewing the Commissioner's determination of plaintiff's claims.

[3]  The administrative transcript (Docket # 12) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

dangerous machinery. (*Id.*). At steps four and five, the ALJ determined that plaintiff was unable

to perform her prior positions, but that other positions existed in the national economy that

plaintiff could perform, including sorter, mail clerk, and office helper. (*Id.*). Accordingly, the

ALJ found that plaintiff was not disabled. (*Id.*).


### III.   <u>Plaintiff's Contentions</u>

Plaintiff contends that the ALJ's determination is not supported by substantial

evidence. (Docket # 14-1). Plaintiff's sole challenge is that the ALJ's RFC assessment lacks

substantial evidence because it was not supported by any medical opinion assessing plaintiff's

functional limitations. (*Id.*).


### IV.   <u>Analysis</u>

An individual's RFC is his or her "maximum remaining ability to do sustained

work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*,

198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996)). In

making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental

abilities, symptomology, including pain and other limitations which could interfere with work

activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221

(N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider

all the relevant evidence, including medical opinions and facts, physical and mental abilities,

non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*,

2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370

F. App'x 231 (2d Cir. 2010) (summary order).

"[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, 2015 WL 1003933, *21 (W.D.N.Y. 2015) (citation omitted).  While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order), "an ALJ is not a medical professional, and is not qualified to assess a claimant's RFC on the basis of bare medical findings."  *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 257 (W.D.N.Y. 2018) (quotations omitted).  Accordingly, although the RFC determination is an issue reserved for the Commissioner, "[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the Commissioner generally "may not make the connection himself."  *Nanartowich v. Comm'r of Soc. Sec.*, 2018 WL 2227862, *9 (W.D.N.Y. 2018) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)).  Under certain circumstances, such as where the medical evidence shows relatively minor physical impairment, "an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." *House v. Astrue*, 2013 WL 422058, *4 (N.D.N.Y. 2013) (internal quotation omitted).

In this case, the ALJ determined at step two that plaintiff had the severe impairments of a disc herniation in her cervical spine, anxiety, and depression.  (Tr. 14).  With respect to her physical impairments, plaintiff complained of headaches, and neck and back pain that was aggravated by physical activity and that inhibited her ability to turn her neck, to sit or stand for long periods, and to lift, particularly with her right arm.  (Tr. 154, 161-62, 165).  With respect to her mental impairments, plaintiff complained of impaired memory, confusion,

dizziness, anxiety, insomnia, and depression.  (Tr. 146, 151-52, 156-58, 160-61, 165).  Despite

this testimony, the ALJ determined that plaintiff was capable of performing the full range of

simple, unskilled light work with some environmental limitations.  (Tr. 18).  In making this RFC

determination, the ALJ summarized portions of the medical evidence and plaintiff's hearing

testimony and noted that plaintiff received ongoing treatment from her primary care physicians,

but had not engaged in mental health treatment since 2016 and had failed to follow-up with

recommended referrals to specialists to address her impairments.  (Tr. 18-21).

 The ALJ also considered opinions offered by non-examining state agency

consultants Gary Ehlert, MD, and A. Dipeolu, Ph.D.  (Tr. 21).  In July 2017, both consultants

reviewed plaintiff's available medical records.  (Tr. 196-202).  Regarding plaintiff's mental

impairments, Dipeolu opined that she suffered from substance addiction disorder, depression,

and anxiety, and that those impairments were severe.  (*Id.*).  He otherwise concluded that the

record was insufficient to make a psychiatric disability determination.  (*Id.*).  Similarly, Ehlert

reviewed the medical records and determined that the evidence in the file was insufficient to

make a physical disability determination.  (*Id.*).  The ALJ found these opinions were not

persuasive, reasoning that the physicians had never examined plaintiff and, although their

opinions were consistent with the record at the time they were rendered, the medical record was

subsequently developed and demonstrated that plaintiff suffered from both severe and

non-severe medically determinable impairments, as well as both exertional and non-exertional

limitations.  (Tr. 21).

 The treatment notes demonstrate that plaintiff received ongoing treatment from

her primary care physicians, including medication management to address her anxiety and

insomnia, and ongoing suboxone treatment.  (Tr. 383-86, 505-71, 670-717).  Her primary care

physician, David Newberger, MD, also referred her to a neurologist to evaluate her complaints of seizures, ordered imaging to address her complaints of back and neck pain, and prescribed a cane and a disability permit due to her seizure complaints.  (Tr. 510, 685, 716-17).  According to Newberger, plaintiff's imaging results revealed a C5-C6 right paracentral disc herniation exerting mass effect on the thecal sac and exiting bilateral nerve roots, for which he referred her to a neurosurgeon for further evaluation.  (Tr. 712-13).  His treatment notes repeatedly observed that she demonstrated moderate anxiety and mild limitations in range of motion in her neck upon examination.  (Tr. 673, 679, 684, 698, 703, 708, 712).

The record does not contain a useful assessment from any medical source of plaintiff's mental and physical limitations.  Although both Ehlert and Dipeolu reviewed the medical record, they concluded that it was insufficient to permit them to render a disability opinion, and they did not provide any opinion addressing plaintiff's functional limitations.  "[I]n some circumstances, an ALJ may make an RFC finding without treating source opinion evidence."  *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d at 259 (citing *Muhammad v. Colvin*, 2017 WL 4837583, *4 (W.D.N.Y. 2017)).  *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (summary order) (where "the record contains sufficient evidence from which an ALJ can assess the claimant's [RFC], . . . a medical source statement or formal medical opinion is not necessarily required") (internal quotation and citations omitted).  In those circumstances, however, "the RFC assessment will be sufficient only when the record is 'clear' and contains 'some useful assessment of the claimant's limitations from a medical source.'"  *Benman*, 350 F. Supp. 3d at 259 (quoting *Muhammad v. Colvin*, 2017 WL 4837583 at *4).  In other words, an ALJ "may not interpret raw medical data in functional terms."  *Militello v. Comm'r of Soc. Sec.*, 2019 WL 1409711, *3 (W.D.N.Y. 2019) (internal quotations and citations omitted).  Where the

record lacks a "useful assessment" of the claimant's limitations, remand is appropriate.  *See*, *e.g.*, *Militello v. Comm'r of Soc. Sec.*, 2019 WL 1409711 at *3-4; *Benman*, 350 F. Supp. 3d at 260; *Smith v. Comm'r of Soc. Sec.*, 337 F. Supp. 3d 216, 226-27 (W.D.N.Y. 2018).  In the present case, "[t]he Commissioner does not argue, and the Court does not find, that [p]laintiff's impairments were so simple and mild that the ALJ could craft an RFC based on common sense." *Carla S. v. Comm'r of Soc. Sec.*, 2020 WL 7021441, *3 (W.D.N.Y. 2021) (collecting cases).

Although the record contains treatment notes, including some from specialists, those notes generally contain bare medical findings and do not address or shed light on how plaintiff's impairments affect her physical and mental ability to perform work-related functions. The only opinions contained in the record were those authored by Ehlert and Dipeolu, both of whom opined that they were unable to offer an assessment of plaintiff's capabilities.  There are no opinions in the record reflecting plaintiff's work-related capabilities, whether from one of plaintiff's medical sources or otherwise.  Indeed, the only treatment note that arguably addresses plaintiff's ability to function in a work setting was a note from Newberger indicating his belief that plaintiff was unable to work and was likely to be disabled for two years and potentially permanently.  (Tr. 713).  The ALJ did not acknowledge or discuss this notation anywhere in his opinion.  For these reasons, the cases cited by the Commissioner (Docket # 16-1 at 17-18) are distinguishable from the instant case.  *See*, *e.g.*, *Snyder v. Saul*, 840 F. App'x 641, 643 (2d Cir. 2021) (summary order) (ALJ considered and weighed several medical opinions in formulating RFC); *Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (summary order) (ALJ did not improperly rely on his own lay judgment in determining RFC where ALJ discounted portions of medical opinions); *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109 (2d Cir. 2020) (summary order) ("[t]here was substantial evidence supporting the ALJ's

determinations in this case[;] [t]he district court relied on the consulting physician reports and treatment notes in coming to its determination");  *Corbiere v. Berryhill*, 760 F. App'x 54, 57 (2d Cir. 2019) (summary order) (ALJ considered several medical opinions when assessing RFC); *Wright v. Berryhill*, 687 F. App'x 45, 49 (2d Cir. 2017) (summary order) (ALJ afforded "great weight" to the opinion of the plaintiff's treating physician, and "the ALJ's RFC determination . . . incorporated the[] limitations" identified by that physician and the ALJ also gave great weight to the opinion of the consultative examiner); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x at 7 (ALJ relied upon the treating physician's treatment notes, which "provide[d] contemporaneous medical assessments of [the plaintiff's] mood, energy, affect, and other characteristics relevant to her ability to perform sustained gainful activity); *Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (summary order) (ALJ relied upon a letter from plaintiff's physician discussing the plaintiff's limitations before and after surgery); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34-35 (2d Cir. 2013) (summary order) (ALJ relied upon opinions provided by consulting physicians); *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (summary order) (ALJ's RFC assessment was largely supported by consulting examiner's medical opinion); *Berry*, 675 F.2d at 468-69 (ALJ's conclusions were supported by examining psychiatrist's opinion); *see also Deborah H. v. Comm'r of Soc. Sec.*, 2021 WL 1608574, *5 (W.D.N.Y 2021) (distinguishing *Corbiere*, *Monroe*, *Tankisi*, and *Pellam*; "[i]n those cases, however, there was at least a useful assessment of the claimants' functionality from a treating source to help guide the ALJ"); *Ippolito v. Comm'r of Soc. Sec.*, 2019 WL 3927453, *4 (W.D.N.Y. 2019) (summary order) (distinguishing *Johnson*, *Monroe*, and *Wright*).

The ALJ's repeated mischaracterizations of the evidence further undermine the ALJ's determination.  First, as noted by plaintiff, the ALJ concluded that "[t]here are no medical

records showing that a cane was prescribed or the paperwork for a handicapped parking pass were filled out." (Tr. 20). Yet, Newberger's treatment notes demonstrate the contrary (although the cane and parking pass were recommended due to plaintiff's complex partial seizures, a condition that the ALJ found to be not medically determinable).[4] (Tr. 685). Additionally, the ALJ stated that the record did not contain a diagnosis relating to PTSD, despite the fact that Newberger specifically documented his diagnosis of plaintiff's chronic PTSD in her medical record. (Tr. 15, 652). The ALJ also found that plaintiff inaccurately reported that she took suboxone to control her pain when the suboxone was in fact prescribed to control her substance abuse disorder. (Tr. 20). Although the record demonstrates that plaintiff was prescribed suboxone to manage her addiction, treatment notes suggest suboxone was also used in lieu of other pain control medication in order to manage her pain. (Tr. 421; *see also* Tr. 100, 107). Finally, the ALJ inexplicably suggested that plaintiff was not credible because she alleged an onset date of June 1, 2016, yet stated that several chronic problems were caused or worsened by a surgery in March 2017. (Tr. 20). The record demonstrates that plaintiff suffered preterm premature rupture of the membrane ("PPROM") in March 2017, resulting in the loss of her pregnancy, significant hemorrhaging and blood loss, and a full emergency hysterectomy. (Tr. 465). Subsequent treatment notes indeed suggest a decline in plaintiff's mental and physical health following this hospitalization. (Tr. 530-45).

"As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations . . . , to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *See Gross v. Astrue*, 2014 WL

---

[4] The Commissioner maintains that plaintiff's mother did not report that plaintiff used a cane (Docket # 16-1 at 19), but the form containing this information was completed by plaintiff's mother prior to the date that Newberger prescribed the cane. (*Compare* Tr. 329 *with* Tr. 685).

1806779, *18 (W.D.N.Y. 2014) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d at 912).

Review of the record leads me to conclude that remand is appropriate to allow the ALJ to do so

here.  *See Tavion T. v. Comm'r of Soc. Sec.*, 2021 WL 1559243, *4 (W.D.N.Y. 2021) ("[t]he

only 'opinions' of record were a non-examining consultant's opinion that the record contained

insufficient evidence to form an opinion[;] . . . [b]ecause of the above issues, especially with

regard[] to the lack of medical opinion evidence regarding functional limitations caused by

[p]laintiff's mental impairments, there exists a gap in the record"); *Timothy S. v. Comm'r of Soc.

Sec.*, 2021 WL 661392, *3 (W.D.N.Y. 2021) ("the ALJ is a layperson and was not permitted to

draw the sorts of highly specific functional limitations from the medical evidence as she did,

absent the support of a medical opinion or other functional assessment by a medical source");

*Barnhardt v. Saul*, 2020 WL 1330704, *3-4 (W.D.N.Y. 2020) ("the sole opinion in the record

was from the [s]tate [a]gency consultant, who concluded that there was insufficient evidence to

decide the claim and, therefore, that opinion did not contain any functional assessment[;] . . .

without any functional medical opinion evidence, the RFC could not have been based upon

substantial evidence").


## CONCLUSION

          For the reasons stated above, the Commissioner's motion for judgment on the

pleadings **(Docket # 16)** is **DENIED**, and plaintiff's motion for judgment on the pleadings

**(Docket # 14)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this

case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further

administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*

MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
       September 20, 2021